CHARLES P. DIAMOND (SB # 56881)
LAW OFFICES OF CHARLES P. DIAMOND
cdiamond@omm.com
AMY R. LUCAS (SB # 264034)
alucas@omm.com
1999 Avenue of the Stars, 8th Floor
Los Angeles, California 90067-6035
Telephone: +1 310 553 6700
Facsimile: +1 310 246 6779

RICHARD P. LASTING (SB # 53950)
RICHARD P. LASTING LAW OFFICES
richardplasting@sbcglobal.net
315 East 8th Street, Suite 801
Los Angeles, CA 90014
Telephone: +1 213-489-9025
Facsimile: +1 310-626-9677

Attorneys for Defendant JUAN SANCHEZ

*Additional counsel on subsequent page*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2: 18- CR-172-GW-4 |
| Plaintiff, | **DEFENDANTS' JOINT OBJECTION TO CONCEALING JUROR IDENTITIES** |
| v. | |
| MICHAEL LERMA,, et al., | FPTC:   FEB. 10, 2025 |
| Defendants. | TIME:   1:00 PM |
| | ROOM:  9D |
| | HON. GEORGE H. WU |

SHAUN KHOJAYAN (SBN 197690)
shaun@khojayan.com
515 S. Flower St., 19th Floor
Los Angeles, CA 90071
Phone: 310-274-6111; Fax 310-274-6211

DANIEL A. NARDONI (SBN 94201)
dan@nardonilaw.net
215 North Marengo Avenue Suite 328
Pasadena, CA 91101
Phone: 626-578-9872; Fax: 626-578-9873

Attorneys for Defendant JOSE VALENCIA GONZALEZ

KENNETH M. MILLER (SBN 151874)
Ken@KMMillerLaw.com
26944 Camino de Estrella, Suite B
Capistrano Beach, California 92624
Phone: 949-388-3440

RICHARD G. NOVAK (SBN 149303)
Richard@RGNLaw.com
P. O. Box 5549
Berkeley, CA 94705
Phone: 626-578-1175; Fax: 626-685-2562

Attorneys for Defendant CARLOS GONZALEZ

MARRI B. DERBY (SBN107209)
marri@marriderbylaw.com
23 Corporate Plaza Suite 150
Newport Beach, CA 92660
Phone: 949-510-4785; Fax: 949-608-7034

JOEL M. FURMAN (SBN 282222)
1432 Edinger Avenue, Suite 240
Tustin, CA 92780
Phone: 949-887-2397
Email: joelfurmanlaw@gmail.com

Attorneys for Defendant MICHAEL LERMA

1 | **I.    INTRODUCTION**

2    The Court understandably seeks to make the jury comfortable with sitting in

3  judgment of four men with alleged Mexican Mafia ties.  *See* Dkt. 1525.  But an

4  anonymous jury is an extraordinary and rare procedure that should be used only

5  when compelling circumstances require that the jury be protected from concrete

6  risks of threats or intimidation, or when for some other reason the integrity of the

7  judicial process is at risk.  None of those conditions exists here.  The charges in this

8  case do not involve any interference with the judicial system.  The government has

9  not alleged, and there is no evidence, that any defendant has ever attempted to

10  interfere with any witness or juror in this case.  The potential length of incarceration

11  or the publicity of the case do not justify a fully anonymous jury, especially when

12  reasonable safeguards can be adopted to protect the jurors' privacy and safety.

13  Defendants object to blanket anonymity.

14    To the extent the Court feels justified in assuring the jury that their identities

15  will not be known, it can do so by directing that the jurors' names and other

16  identifying information be shared only with the experienced professionals on the

17  defense teams and not the defendants themselves.  The Court's objective can be

18  achieved without unduly tying defense counsels' hands in picking a fair and

19  impartial jury.  If the Court puts in place a process that protects the jurors' identities

20  from the defendants, it must nevertheless allow their experienced counsel to do

21  their jobs.  Counsel must be given access to potential juror identities in order

22  conduct reasonable due diligence, provided an opportunity to conduct meaningful

23  voir dire, and safeguards must be put in place to avoid suggesting the defendants'

24  guilt even before the trial begins.

25 | **II.    A COMPLETELY ANONYMOUS JURY IS NOT WARRANTED**

26    "[E]mpaneling an anonymous jury is an unusual measure that is warranted

27  only where there is a strong reason to believe the jury needs protection or to

28  safeguard the integrity of the justice system, so that the jury can perform its

1  factfinding function." *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003);

2  *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir. 1994) (anonymous jury is a

3  "...drastic measure, one which should be undertaken only in limited and carefully

4  delineated circumstances").  "The invocation of words such as 'organized crime,'

5  'mob,' and 'the Mafia,' unless there is something more, does not warrant an

6  anonymous jury." *United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991).

7      The reason that anonymous juries must be used sparingly and with caution is

8  the very real threats they pose to infringing on defendants' constitutional rights:

9  First, "anonymous juries may infer that the dangerousness of those on trial required

10  their anonymity, thereby implicating defendants' Fifth Amendment right to a

11  presumption of innocence." *Shryock*, 342 F.3d at 971.  Second, "the use of an

12  anonymous jury may interfere with defendants' ability to conduct voir dire and to

13  exercise meaningful peremptory challenges, thereby implicating defendants' Sixth

14  Amendment right to an impartial jury." *Id*.[1]

15      Given these considerations, a fully open trial is preferable except in limited

16  circumstances, namely, "where (1) there is a strong reason for concluding that it is

17  necessary to enable the jury to perform its factfinding function, or to ensure juror

18  protection; and (2) reasonable safeguards are adopted by the trial court to minimize

19  any risk of infringement upon the fundamental rights of the accused." *Shryock*, 342

20  F.3d at 971.

21      In determining whether the jury should be anonymous, the Ninth Circuit

22  directs courts to five non-exclusive and non-dispositive factors: (1) the defendants'

23  involvement with organized crime; (2) the defendants' participation in a group with

24  the capacity to harm jurors; (3) the defendants' past attempts to interfere with the

25  _____

26  [1] The Ninth Circuit's Manual on Jury Trial Procedures (2013) cautions that the
Fifth and Sixth Amendments provide for public trials and Due Process, and that
circuit courts have also noted that the First Amendment may confer a presumptive

27  right to obtain the names of jurors.  *See* Ninth Circuit's Manual on Jury Trial
Procedures (2013) at 50; *See generally, United States v. Wecht*, 537 F.3d 222, 235

28  (3rd Cir. 2008), *relying in part on Press-Enterprise Co. v. Superior Court*, 478 U.S.
1, 8-9 (1986).

DEFENDANTS' JOINT OBJECTION
                                        TO CONCEALING JUROR IDENTITIES

judicial process or witnesses; (4) the potential that the defendants will suffer a
lengthy incarceration if convicted; and (5) extensive publicity that could enhance
the possibility that jurors' names would become public and expose them to
intimidation and harassment.  *Id*.  However, "the district court should make its
decision based on the totality of the circumstances."  *Id*.

*United States v. Shryock* is distinguishable.  There, the record showed
defendants' actual involvement in attempting to interfere with the judicial process
"by testifying falsely and threatening, assaulting, killing, or attempting to kill
potential witnesses in other cases," and they also "blatantly subpoenaed individuals
to penal institutions under the guise of needing them as witnesses in their case, then
attacked those persons in attorney visiting rooms."  *Id*. at 972.  No such allegations
have been made here, and there is no evidence of any such thing.

The charges at issue do not involve interference with the judicial system.
The government alleges that defendants murdered Mr. Bencom (which defendants
obviously dispute), but even under the government's theory, Bencom was allegedly
killed over a drug debt, not anything to do with alleged cooperation with law
enforcement.  And the alleged kidnapping and felon-in-possession charges involve
the government's allegation that defendants C. Gonzalez and Sanchez supposedly
kidnapped Christina Vargas in order to obtain a $500 bail bond refund.

Nor is there any evidence of any attempt to interfere with any witness in this
case.  Granted, cooperating witnesses Rodriquez and Vargas are dead, but
Rodriquez died in Las Vegas in an unrelated 2023 shooting disconnected from the
Mexican Mafia or any of the defendants.  Vargas in a drunk driving accident in
2016 after leaving a casino with a friend who, under the influence of alcohol and
methamphetamine, rolled the car off a highway while speeding.

Similarly, there is no evidence that these defendants have threatened anyone
connected to this case.  While cooperating confidential informants have expressed
concern over their safety given their cooperation in exchange for reductions on their

DEFENDANTS' JOINT OBJECTION
TO CONCEALING JUROR IDENTITIES

own sentences and other benefits, that is the case with prison informants of any stripe given the prison mores.  To our knowledge, none has pointed to anything concrete to suggest their discomfort is of defendants' making.

In short, the government has not alleged, and there is no evidence, that any defendant has ever done anything to interfere with any witness in this trial, much less a potential juror.[2]  Nor is there any allegation that any defendant has attempted to obstruct justice or interfere with the judicial process.  *See Vario*, 943 F.2d at 240 ("An obstruction of justice charge, particularly one involving jury tampering, has always been a crucial factor in our decisions regarding anonymous juries.").  This is not a case that has received extensive media coverage or publicity, and the mere invocation of the Mexican Mafia name, "unless there is something more, does not warrant an anonymous jury."  *Id.* at 241.

## III.  AN ENTIRELY ANONYMOUS JURY WILL DEPRIVE THE DEFENSE OF THE ABILITY TO CONDUCT MEANINGFUL VOIR DIRE AND THEIR SIXTH AMENDMENT RIGHTS

### A.  Concealing Jury Identity from the Parties' Counsel is a Drastic Step that Should Not Be Done Lightly or Without Compelling Justification

There is no basis to order anonymity in this case.  This is a "drastic measure, [and] one which should be undertaken only in limited and carefully delineated circumstances."  *Ross*, 33 F.3d at 1519.  The Ninth Circuit recognizes that the use of a fully anonymous jury may interfere with defendants' ability to conduct voir dire and to exercise meaningful peremptory challenges, thereby implicating defendants' Sixth Amendment right to an impartial jury."  *Shryock*, 342 F.3d at 971.

At minimum, counsel must be provided the names of the potential jurors in order to conduct reasonable diligence and attempt to confirm that the answers

---

[2] The potential life prison terms at issue here cannot weigh heavily, as lengthy sentences are common in the federal penal system.  At most, this factor is neutral, given a long potential sentence renders it all the more important that jury selection be fair and protect defendants' constitutional rights.

provided in questionnaires are truthful, in order to conduct a meaningful voir dire and exercise cause and peremptory challenges. An "impartial trier of fact" is a "touchstone of a fair trial." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). "The presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." *Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998) (en banc).

Bias is presumed where a juror "lies in order to secure a seat on the jury." *Dyer*, 151 F.3d at 983; *see also Green v. White*, 232 F.3d 671, 677 & n.7 (9th Cir. 2000). That is so because a juror who "lies materially and repeatedly in response to legitimate inquiries about her background introduces destructive uncertainties into the process," even in the absence of actual bias. *Dyer*, 151 F.3d at 983. Such a juror "can be expected to treat her responsibilities as a juror … with … scorn," and "may believe that the witnesses also feel no obligation to tell the truth and decide the case based on her prejudices rather than the testimony." *Id*.; *see also United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir. 1979) (new trial required where juror in heroin-related prosecution concealed that he had two sons in prison for heroin-related offenses); *United States v. Perkins*, 748 F.2d 1519, 1522-23 (11th Cir. 1984) (new trial required where juror falsely represented in voir dire he had not been involved in prior litigation, because juror's "dishonesty, in and of itself, [was] a strong indication" of bias and juror's "involvement in prior similar litigation" created "additional inference of bias").

Empaneling an entirely anonymous jury renders it impossible for counsel to conduct any diligence whatsoever into whether the answers that potential jurors provide on the questionnaires are true, incomplete, or otherwise called into question. Without the ability to conduct such diligence, defendants cannot meaningfully exercise their cause and peremptory challenges, which would deprive them of their Sixth Amendment rights. Defendants are represented in this case by skilled counsel with decades of experience, who can and will put in place

1  safeguards to assure security of the information.

2       Defense counsel are mindful of the Court's concerns, but they do not justify

3  draconian countermeasures.  In *United States v. Barragan*, 871 F.3d 689, 712 (9th

4  Cir. 2017), for example, the court empaneled an anonymous jury where only the

5  court ***and the attorneys*** were permitted to have the names of the jurors.  After the

6  government moved for an anonymous jury, the trial court ruled that the jurors

7  would be referred to in court by numbers only, but that the attorneys would be

8  given the names of all prospective jurors in advance to do background checks,

9  without divulging those names to their clients.  *Id*. at 712.[3]  Similarly, in *United*

10  *States v. Richardson*, 722 F. Supp. 3d 1199, 1206 (D. Kan. 2024), the court granted

11  the government's request for an anonymous jury but ordered that the prospective

12  jurors' names, addresses, and places of employment be disclosed to the defendant's

13  attorneys and trial staff, as long as they didn't disclose the information to the

14  defendant.

15       Defendants submit that there is no basis for anonymity, but if the Court

16  concludes otherwise, employing the same mechanisms here will address the Court's

17  concerns, while protecting the defendants' right to an impartial jury.  *See United*

18  *States v. Wells*, No. 20-30009, 2022 WL 17668096, at *4 (9th Cir. Dec. 14, 2022)

19  (finding district court did not err in limiting the disclosure of certain information

20  about potential jurors because the court established "safeguards" to protect the

21  defendant's rights, "including complete disclosure to [the defendant's] counsel.").

22

23

24

25

---

26  [3] *United States v. Mikhel*, 889 F.3d 1003 (9th Cir. 2018) is not instructive here.  In
   that case, after the court empaneled an anonymous jury, the defendants failed to ask

27  the district court to disclose the prospective jurors' names and addresses to defense
   counsel.  *Id*. at 1032.  On appeal, the defendants argued that the district court should

28  have provided defense counsel with the information *sua sponte* under a protective
   order.  *Id*.

DEFENDANTS' JOINT OBJECTION
TO CONCEALING JUROR IDENTITIES

1
2

### B.    Expanded Voir Dire and Safeguards Are Essential With Any Form of Anonymous Jury

3      Finally, the use of an anonymous jury—in any form—warrants expanded

4   voir dire.  Those courts that have allowed use of the anonymous jury have

5   emphasized that the trade-off is often the need for the expansion of voir dire,

6   allowing probing for biases that might be caused by the use of an unusual

7   procedure.  *Vario*, 943 F.2d at 241-42; *United States v. Gambino*, 809 F. Supp.

8   1061, 1068 (S.D.N.Y. 1992).  The Ninth Circuit Manual on Jury Trial Procedures

9   likewise encourages expanded voir dire when using an anonymous jury.  *See* Ninth

10  Circuit Manual at 50-51.

11     In addition, if the Court is inclined to order any form of anonymity,

12  safeguards must be put in place to protect defendants' Fifth Amendment rights.  *See*

13  *Barragan*, 871 F.3d at 712 (court stated that jurors' information would be reviewed

14  "only by the court and by the attorneys" but not "released to the general public or

15  the media," which "suggest[ed] that the reason for anonymity was publicity-

16  related.";  "did not state that jurors' identities were being withheld from the

17  defendants or that juror anonymity was unique to this case"; repeatedly instructed

18  on the presumption of innocence; and "either excused the juror or gave an

19  explanatory instruction" any time a juror expressed fear); *Shryock*, 342 F.3d at 972

20  (court "instructed the jury that the reason for their anonymity was to protect their

21  privacy from curiosity-seekers" and "that the use of anonymous juries was

22  commonplace in federal court, and that the reasons for the use of such a jury here

23  had nothing to do with the Appellants' guilt or innocence").  Similar safeguards

24  must likewise be employed here if any anonymity is ordered.

25  ## IV.    CONCLUSION

26     Given the totality of circumstances, anonymity is not warranted, and at

27  minimum any concern over juror safety can be assuaged by keeping their identities

28  from the defendants and the public.  But there is no reason to go the extra step of

keeping it from the parties' counsel.  Extended voir dire, coupled with instructions similar to those given to the jury in *Barragan* and *Shryock*, strikes the appropriate balance between making jurors comfortable in doing their jobs and allowing the parties' experienced counsel to do theirs.

Dated:  February 7, 2025          Respectfully submitted on behalf of these

four defendants,

Amy R. Lucas
Charles M. Diamond
Richard P. Lasting
ATTORNEYS FOR DEFENDANT
JUAN SANCHEZ